IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MYRIAH M.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 3:25-cv-00789-HZ

OPINION & ORDER

Lisa Lang
Lisa Lang Law LLC
5200 SW Meadows Rd., Suite 150
Lake Oswego, OR 97035

Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

David Priddy
Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiff Myriah M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 12, 2023, alleging an onset date of October 10, 2018. Tr. 53.[2] Plaintiff's date last insured ("DLI") is June 30, 2022. Tr. 53. Her application was denied initially and on reconsideration. Tr. 68, 86.

On February 3, 2025, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 34. On March 11, 2025, the ALJ found Plaintiff not disabled. Tr. 30. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on posttraumatic stress disorder ("PTSD"), major depressive disorder, radiculopathy and sciatica of her left lower extremity, retinal migraines, tension headaches, thoracolumbar strain, intervertebral disc syndrome, and a "rib condition." Tr.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

206. At the time of her date last insured, she was 36 years old. Tr. 29. She has at least a high school education and past relevant work experience as a server. Tr. 28-29.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**THE ALJ'S DECISION**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date through the date last insured. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "a depressive disorder, an anxiety disorder, attention deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD)." Tr. 19. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 21. At step four, the ALJ concluded that through the DLI, Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following limitations:

> She can occasionally climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to extreme cold, vibration, and hazards such as unprotected heights and moving mechanical machinery. She can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less. She can tolerate occasional changes in a routine work setting. She can tolerate occasional interaction with the general public, coworkers, and supervisors.

Tr. 22-23. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 28. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as hand packager,

warehouse worker, and food service worker. Tr. 29. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in four ways: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly analyzing the medical opinions of Bethany Franklin-Comb, Ph.D., and Lawrence Maher, NP; (3) failing to explain his finding at step four that Plaintiff could no longer perform her past relevant work; and (4) failing to include all of Plaintiff's limitations in the RFC. *See generally* Pl.'s Br., ECF No. 9. The Court disagrees.

///

## I. Subjective Symptom Testimony

Plaintiff challenges the ALJ's analysis of her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").

Plaintiff last worked in 2017 or 2018 as a server in her mother's café. Tr. 38. In that role, she worked as a cashier, bussed tables, served food, and washed dishes. Tr. 38-39. But if Plaintiff

was having a rough day, Plaintiff would instead work in her mother's flower shop delivering flowers. Tr. 38-39. She delivered flowers a couple hours a week. Tr. 39.

Plaintiff has both physical and mental impairments that limit her ability to work. Plaintiff testified that she has back issues that cause neuropathy in her leg that have worsened with time. Tr. 45, 48. But her primary issues are related to her PTSD and depression. Tr. 45, 48. Plaintiff was sexually assaulted when she was in the military, resulting in a child. Tr. 44. Plaintiff has been resistant to pursuing therapy because she is afraid it will "get worse before it gets better" and cause her to resent her child. Tr. 47. Plaintiff testified that her mental health has not improved since her onset date in 2018. Tr. 47.

Her mental health issues make it difficult for her to focus. Tr. 46. She is triggered easily by certain noises and smells. Tr. 45, 49. Plaintiff also testified that she has several panic attacks each week where she cannot breathe, begins to hyperventilate, and "needs to run and go away" but instead freezes and is trapped. Tr. 48-49. These last an hour. Tr. 49.

Plaintiff testified that she cannot work, even in a job with limited interaction with other people. Tr. 48. She struggles to even shower regularly because of exhaustion and lack of motivation. Tr. 48. She can only function for shorter periods of time at home. Tr. 46. She gets overwhelmed easily by daily tasks like laundry and dishes. Tr. 46. Things are mentally and physically exhausting, and she has no motivation to do them. Tr. 46. As a result, she does not do a lot with her kids. Her husband is their primary caretaker. Tr. 46. They do not have any "extracurricular" activities. Tr. 46.

The ALJ rejected Plaintiff's subjective symptom testimony for three reasons. First, the ALJ found that Plaintiff's activities of daily living conflict with Plaintiff's testimony. Second,

the ALJ noted Plaintiff's limited course of treatment and improvement with medication. Finally, the ALJ found that Plaintiff's allegations are unsupported by and inconsistent with the record.

A. Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from [their] credibility," *Webb v. Banhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ discounted Plaintiff's testimony because her claims of difficulties with daily activities conflicted with her reports to providers regarding said activities. Tr. 26. Specifically, the ALJ cites: (1) Plaintiff's reports to "a provider in early 2021 that she was able to complete household chores and help her son with schoolwork"; (2) Plaintiff's ability to travel out of town for the holidays in 2022; and (3) Plaintiff's report to providers that she was home-schooling her

children. Tr. 26. Taken together, the ALJ concludes that these activities "suggest she is likely capable of performing" tasks consistent with the RFC. Tr. 26.

While the limited medical record in this case is mixed, the Court finds that substantial evidence supports the ALJ's decision. Plaintiff does at times report difficulties with focus and brain fog. Tr. 711 (fatigue and motivation issues), 304 (struggles with work due to poor focus), 452-43 (lack of motivation and difficulty focusing), 378 (reports of "brain fog"). But—as the ALJ notes—she also reports no difficulty with activities of daily living in a few places in the record. *See* Tr. 423 (notes ability to complete chores and help son with school), 388 (call to provider seeking medication refill while they are on vacation for the holidays), 785 (notes she home schools her children); *see also* Tr. 315-16 (attending full-time school, managing after separating from her significant other, and painting between school and drop off), 399-400 (calling to request medications while on vacation road trip). Most notably, her reports of assisting her children conflict with Plaintiff's testimony that her husband is the primary caretaker, that she does not do a lot with her kids, and that she struggles with motivation and focus. Tr. 46. In the context of the record a whole, the Court finds that this evidence is such that a reasonable mind could accept the ALJ's conclusion.

B. Conservative Treatment and Improvement with Treatment

In evaluating a claimant's testimony, the ALJ may rely on evidence of effective treatment. *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti*, 533 F.3d at 1040 (finding claimant's testimony undermined by the fact he responded well to conservative treatment). But where "[c]ycles of improvement and debilitating symptoms are a common occurrence," an ALJ errs by "pick[ing] out a few isolated

instances of improvement over a period of months or years and . . . treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The Ninth Circuit has also "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039). However, discounting a claimant's credibility is not proper where "the claimant has a good reason for not seeking more aggressive treatment." *Carmickle*, 533 F.3d at 1162. Further, in the mental health context, continuous care under a mental health professional and the prescription of psychotropic medications do not constitute "conservative treatment." *Overton v. Berryhill,* No. 17CV25-BEN (BLM), 2017 WL 5159550, at *18 (S.D. Cal. Nov. 6, 2017). And the Ninth Circuit has cautioned that individuals with mental health impairments should not be penalized for exercising "'poor judgment in seeking rehabilitation.'" *See Regennitter v. Comm'r Soc. Sec. Admin.,* 166 F.3d 1294, 1299–1300 (9th Cir.1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ cited Plaintiff's routine and successful treatment of her conditions as a basis for rejecting her subjective symptom testimony. Specifically, while recognizing that Plaintiff's reluctance to start therapy was understandable, the ALJ found "her testimony of uncontrolled symptoms is not persuasive given the reports of relatively well managed depression and ADHD symptoms with only routine treatment." Tr. 25. In support of this finding, the ALJ cited the long gaps in Plaintiff's treatment history and reports to providers that her medications were working well. Tr. 24-25.

The ALJ's findings are clear, convincing, and supported by substantial evidence. During the relevant period after Plaintiff's Compensation & Pension[3] ("C&P") exams and before Plaintiff's DLI, Plaintiff only saw providers five times for her mental health. *See* Tr. 452, 450, 448, 440, 422. At one point, there was a year-long gap in her treatment. *See* Tr. 422, 440. At four of these appointments, Plaintiff reported that her depression was stable or mildly improved with Zoloft, and that her ADHD was stable or improving with her Adderall prescription. *See* Tr. 451, 448, 441, 423; *see also* Tr. 456 (postpartum visit after birth of child early in relevant period, noting no depression). At appointments after Plaintiff's DLI, Plaintiff similarly reported good control of her ADHD and depression at most of her appointments. Tr. 387, 384, 395-96; *see also* Tr. 785 (denying depression but experiencing daily anxiety). While Plaintiff gave sufficient reasons for not pursuing therapy, the record—which shows limited appointments and effective treatment of Plaintiff's conditions—does not support Plaintiff's allegations of debilitating mental health symptoms.

C. Lack of Support from the Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ."). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain circumstances,

[3] C&P exam is a medical examination conducted by the Department of Veterans Affairs to help determine the severity of a veteran's disability and whether a veteran's disability is connected to their military service.

the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive'" pain symptoms could not be explained on objective, physical basis by claimant's treating physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). This may not, however, be the ALJ's sole reason for discounting a claimant's testimony: "[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick,* 157 F.3d at 722; *see also* 20 CFR §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found that Plaintiff's reports of mental health symptoms were not supported by the objective medical evidence. Tr. 25. The ALJ specifically cited Plaintiff's limited reports of panic attacks and PTSD symptoms as well as providers' observations of normal mood, behavior, and thought content at appointments. Tr. 25.

The ALJ's decision is supported by substantial evidence in the record. As noted above, the record largely reflects reports of manageable depression, PTSD symptoms, ADHD, and anxiety. Tr. 315, 456, 448, 441, 423, 395-96, 387, 785. Indeed, Plaintiff reported feeling "good" and "doing well" to providers. Tr. 448 (mild improvement in depression symptoms), 423 ("overall good and managed"). The ALJ therefore did not err in rejecting Plaintiff's subjective symptom testimony.

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in his treatment of the opinions of two medical providers: Bethany Franklin-Comb, PhD, and Lawrence Maher, NP. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including

treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A. Bethany Franklin-Comb, Ph.D

Dr. Franklin-Comb conducted Plaintiff's C&P examination of Plaintiff's mental health problems in September 2018. In her exam, Dr. Franklin-Comb diagnosed Plaintiff with PTSD and moderate major depressive disorder. Tr. 302. She concluded that Plaintiff would have occupational and social impairments—with reduced reliability and productivity—due to her

diagnoses. Tr. 303. Dr. Franklin-Comb also noted that Plaintiff struggles with work due to poor focus and has a hard time with people. Tr. 304. She described Plaintiff's reports of nightmares, hypervigilance, and becoming "absorbed" by past trauma, and she noted Plaintiff's 2017 hospitalization due to suicidal ideation. Tr. 304. Dr. Franklin-Comb concluded that Plaintiff meets the DSM-5 criteria for PTSD and that Plaintiff's conditions were connected to the sexual assault that occurred during her time in the military. Tr. 305.

In evaluating Dr. Franklin-Comb's C&P report, the ALJ concluded first that her assessment "of [Plaintiff's] marked symptoms is not an opinion on the claimant's mental work abilities or limitations, and as such it does not meet the requirements to be considered a medical opinion." Tr. 28. In the alternative, the ALJ discounted Dr. Franklin-Comb's report of marked limitations in mental functioning as (1) unsupported by the provider's own observations of Plaintiff and reliant on Plaintiff's subjective reports and (2) inconsistent with Plaintiff's routine course of treatment, reports of improved symptoms, and limited medical evidence. Tr. 28.

Even assuming that the ALJ erred in concluding that Dr. Franklin-Comb's C&P examination does not constitute a medical opinion, the ALJ did not err in discounting her opinion. As to supportability, substantial evidence supports the ALJ's conclusion. Specifically, Dr. Franklin-Comb's own observations of Plaintiff at the exam do not fully support her conclusions as to Plaintiff's marked symptoms. Tr. 306 (noting only mildly restricted affect and depressed mood). As to inconsistency, Dr. Franklin-Comb's conclusions as to Plaintiff's significant symptoms of depression and PTSD are not supported by the medical record as a whole, as noted above. *See supra* Part I(b)-(c). Accordingly, the ALJ did not err in discounting Dr. Franklin-Comb's opinion.

///

B. Lawrence Maher, NP

Nurse Practitioner Maher conducted Plaintiff's C&P examination for her back, rib, and knee impairments in September 2018. Tr. 283. In assessing Plaintiff's back condition, he noted slightly limited range of motion but no evidence of pain with weight bearing and normal gait. Tr. 284-85. He also opined that Plaintiff's limited range of motion does not contribute to functional loss. Tr. 284. Plaintiff's physical exam was largely normal. Tr. 284-86. As to Plaintiff's left knee, he concluded that her range of motion was normal for Plaintiff's body habitus. Tr. 292. He also noted pain on exam and with weight bearing, causing some functional loss. Tr. 292. But there was no evidence of joint instability. Tr. 297. As to Plaintiff's rib condition, NP Maher noted that Plaintiff has periodic pain in her left ribs—mostly when she coughs or gets a cold—but found that it would not limit her function. Tr. 300.

Ultimately, NP Maher opined that Plaintiff would be limited to intermittent weight bearing; intermittent standing for more than thirty minutes at a time; limited to moderate weight in lifting, pushing, pulling and carrying on a non-repetitive basis; non-repetitive bending; and minimal non-repetitive squats. Tr. 287, 297. NP Maher attributed these limitations to Plaintiff's knee and back pain. Tr. 284, 287.

As to all three conditions, NP Maher noted that there was limited medical evidence regarding Plaintiff's back, knee, or rib issues. Specifically, he notes that none of these conditions were appreciated in the 2017 or 2018 medical records preceding the C&P exam and that imaging was negative. Tr. 283, 287, 291, 297, 298. He also noted Plaintiff's self-reports of her back, knee, and rib limitations in his report. Tr. 283, 291, 298.

The ALJ found persuasive NP Maher's opinion that Plaintiff's spinal and rib disorders had no functional impact. Tr. 27. He also concluded, however, that NP Maher's opinion that

Plaintiff's knee condition limited her ability to squat and bear weight was not persuasive. Tr. 27. Specifically, the ALJ noted that Plaintiff had normal strength, no difficulty with gait, and no pain with weight bearing despite a limited range of motion in her back and knee. Tr. 27. The ALJ concluded that the decreased range of motion—in light of Plaintiff's otherwise normal exam—was insufficient to support limiting Plaintiff's ability to squat and bear weight. Tr. 27. The ALJ also noted that the limitations are inconsistent with the evidence in the record, which shows no treatment for these conditions, limited reports of pain to providers, and observations of normal gait. Tr. 27-28

The ALJ did not err in his assessment of NP Maher's opinion. Turning first to supportability, the ALJ correctly noted the largely normal exam results—particularly limited evidence of pain in Plaintiff's back—in the C&P examination that do not support NP Maher's opinion. *See* Tr. 284-85, 297. As to consistency, the ALJ also noted the limited evidence in the record, which shows no treatment for Plaintiff's knee, back, or rib pain. Tr. 27. Indeed, NP Maher noted no evidence in the record immediately preceding the C&P, limited evidence from the time of the alleged injuries causing Plaintiff's pain, and normal imaging of Plaintiff's back, knee, and ribs. Tr. 283, 287, 291, 297, 298. Accordingly, the ALJ did not err in finding NP Maher's opinion not persuasive.

**III. RFC**

Plaintiff argues that the ALJ's RFC is inadequate because it did not account for all relevant evidence. Pl.'s Br. 22. Specifically, Plaintiff identifies the ALJ's failure to take into account Plaintiff's non-severe headaches and migraines as well as chronic pain.[4] *Id.* at 23. The

[4] Plaintiff also argues that the RFC is unsupported because the ALJ erred in his assessment of Plaintiff's subjective symptom testimony and the medical opinion evidence. The Court, however, has concluded that the ALJ did not err in either regard. *See supra* Part I-II. The ALJ, therefore,

residual functional capacity (RFC) is the most a person can do, despite his physical or mental limitations. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence, including the claimant's testimony." *Id.*; SSR 96-8p.

The ALJ did not attribute any limitations to Plaintiff's non-severe headaches, migraines, and chronic pain. Turning first to Plaintiff's migraines, the ALJ noted that there is almost no evidence in the record of Plaintiff's migraines and headaches except for a September 2018 C&P exam and one chart note from 2024. Tr. 20. As to Plaintiff's chronic pain—including pain from Plaintiff's spine disorder, rib condition, and knee—the ALJ similarly noted that there were few appointments for these conditions beyond the C&P exams. Tr. 19-20.

The Court finds that the ALJ did not err in not incorporating any additional limitations into Plaintiff's RFC because of these non-severe impairments. Consistent with the ALJ's findings, the record shows few—if any—appointments during the relevant period for any of these conditions beyond the C&P examinations. *See* Tr. 275 (neuro C&P exam), 282 (C&P exam for back and knee pain), 784-85 (July 2024 appointment noting headaches and arthralgias and myalgias) And in those examinations, the relevant providers conclude these impairments cause few, if any, limitations on Plaintiff's work ability. Tr. 276 (no reports of impairment of memory, attention, concentration, or executive function in neuro C&P exam), 279 (concluding headaches do not impact ability to work and noting panic attacks caused her to cease work). Moreover, the ALJ appropriately rejected Plaintiff's symptom testimony and the opinion of NP Maher, who evaluated Plaintiff's physical impairments. *See supra* Parts I-II. Accordingly, the Court finds that the ALJ did not err in formulating the RFC.

---

did not err in failing to consider the aforementioned evidence in formulating the RFC.

## IV. Step Four

Plaintiff argues that the ALJ did not properly explain his finding that Plaintiff could not return to her past relevant work. Pl.'s Br. 26. At step four, the ALJ determines whether the claimant can perform past relevant work given his RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work as it was actually performed *or* as it is generally performed in the national economy, the claimant is not-disabled within the meaning of the Act, thus concluding the sequential evaluation process. *See, e.g.*, *Tommasetti,* 533 F.3d at 1042–43; SSR 82-61. The ALJ may use two different sources of information to define how a claimant's past relevant work is actually performed: "a properly completed vocational report . . . and the claimant's own testimony." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-61, SSR 82-41). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* (citing SSR 82-62).[5]

The ALJ concluded Plaintiff could not perform any of her past relevant work as a server. Tr. 28. At the hearing, the ALJ consulted a vocational expert ("VE"). *See* Tr. 38. After asking Plaintiff questions about her job as a server, the VE was able to classify the job as DOT code 311.477-030. Tr. 39. The ALJ then presented the VE with a hypothetical person with Plaintiff's RFC and concluded—without waiting for a response from the VE—that Plaintiff's "past work is out." Tr. 40. The ALJ then asked the VE whether there were other jobs that such an individual could perform, and the VE identified "hand packager," "warehouse worker," and "food service

[5] SSR 82-61 and 82-62 were rescinded and replaced by SSR 24-2p on June 22, 2024, but SSR 24-2p was only applied to new applications as of that date. *See* SSR 24-2p n.1. Because Plaintiff applied in 2023, the new SSR is inapplicable here.

worker." Tr. 40-41. All three are unskilled, medium jobs with a specific vocational preparation ("SVP") level of 2. *Id.*

Even assuming the ALJ erred in his abbreviated discussion of Plaintiff's past relevant work, Plaintiff has not explained how the ALJ's decision—in her favor—was harmful. Plaintiff appears to suggest that Plaintiff's past relevant work and one of the jobs identified by the ALJ at step five are so similar that the lack of an explanation from the ALJ regarding Plaintiff's past relevant work renders his decision unsupported by substantial evidence.[6] *See* Pl.'s Br. 27-29. But, as Plaintiff admits, the jobs are different in one important way: the "server" job is a semi-skilled position with an SVP level of 3, while the "food service worker" job is an unskilled position with an SVP level of 2. *Compare* DOT 311.477-030 (SVP level 3, defined as "[o]ver 1 month up to and including 3 months") *with* DOT 314.677.014 (SVP level 2, defined as "[a]nything beyond short demonstration up to and including 1 month"). In light of Plaintiff's RFC limitation to unskilled work that can be learned in 30 days or less, Plaintiff cannot perform her position as a server—which requires one to three months to learn—but can perform the food service worker job—which takes less than one month to learn. *See id.* The Court, therefore, finds that any error in assessing Plaintiff's past relevant work was harmless.

///

///

///

///

---

[6] The Court also notes that Plaintiff does not otherwise appear to challenge the other two positions identified by the ALJ—"hand packager" and "food service worker"—that exist in significant numbers in the national economy. Tr. 40 (VE testimony that there are 69,400 hand packager jobs and 153,000 warehouse worker jobs nationally).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: August 20, 2026.

Marco Hernandez

MARCO A. HERNÁNDEZ
United States Senior District Judge